I'm Alexandra Manbeck, an attorney for the appellant. We have a case here in which the administrative law judge, which I'm going to refer by ALJ, had denied the appellant his claim that he was disabled. First, there is an issue of mental disability. The appellant was treated by two psychiatrists, and he underwent a battery of psychological tests with a psychologist. With respect to the first psychiatrist, Dr. Henderson, the ALJ rejected Dr. Henderson's evaluation because he found that Dr. Henderson's treating notes were illegible. But Dr. Henderson, because his treating notes were illegible, Dr. Henderson provided a typewritten report describing the course of the treatment over a period of about a year and a half. And under the prevailing Ninth Circuit law, if the ALJ had found that Dr. Henderson's treating notes were illegible, he could easily have subpoenaed Dr. Henderson to the hearing and asked him to explain his treating notes, but the ALJ never did that. And then so he disregarded Dr. Henderson's evaluation of the appellant's mental condition. Then with respect to the second psychiatrist, Dr. Zappoli... Excuse me. So just so I understand, the illegible notes Dr. Henderson or counsel recognized were illegible, so that's why there's the three-page typewritten report? Well, yes, Your Honor, in the sense that typically psychiatrists or even physicians provide an evaluation if they were asked to describe the course of treatment because their notes are usually not quite sufficient. They don't explain what the physician found throughout the course of treatment, especially when it went on for an extended period. So it is a customary course of action in psychiatric treatment that psychiatrists usually provide a written evaluation. That I understand. I thought that was why the report was there. Your suggestion was it was specifically provided because the notes were illegible. No, Your Honor. That's not my intention to say that. I say usually provided whether or not the notes were legible or illegible. Then with respect to the second treating psychiatrist, Dr. Zappoli, the ALJ rejected his finding because he found that Dr. Zappoli was not a treating physician. Then the appellant provided to the Social Security Administration an appeal to the Appeals Council, a stack of treating notes of Dr. Zappoli, but the Social Security Administration, the Appeals Council refused to consider them and, again, disregarded Dr. Zappoli's evaluation saying that he was not a treating physician. But the treating notes indicate that the appellant had seen Dr. Zappoli at least four or five times and had been prescribed medication. So that, Your Honor, I submit is an error. What do we do with the magistrate judge's finding on that? Excuse me. You better let me finish my question. You could be answering the wrong question. What do we do with the magistrate judge's finding on that, that the notes are unsigned or that they appear to be in different handwriting and questions the legitimacy of those? Those are very simple evidentiary issues that could have easily been resolved, Your Honor. And I would like to remind the Court that when a case is on appeal before the appeals court, that the appeals court does not really review the district court decision, but it has to go back to the ALJ decision and review. Well, did the ALJ have those notes in front of them? The ALJ did not have those notes, Your Honor. But I, when I submitted those notes myself to the Appeals Council during the request for appeal, I did state that I personally requested those notes. And in my brief to the district court, to the magistrate judge, I did again repeat the statement that I personally requested those notes and sent them over and attached them with the request for appeals. And as far as the magistrate judge's statement that those notes didn't, don't seem to reflect the handwriting of the Zapponi, I respectfully disagree because the district, the magistrate judge could not possibly compare just the signature of the, of Dr. Zapponi's signature in the typewritten report with the whole set of handwritten notes and say, well, the signature is not the same as the handwriting. The signature may be totally different from the handwriting. But in any case, I had personally vowed for their integrity because I requested it from Dr. Zapponi. And also, I may add for the court information, Dr. Zapponi informed me that usually for confidentiality reasons, he usually does not release tweeting notes, and if he's asked for an evaluation, he should provide a hand, a typewritten evaluation which he signed at the end, usually about three pages. So we're coming next to the, Dr. Lesner's report. Dr. Lesner is a psychologist, and it is the customary practice in, in the field of psychiatry is that psychiatrists, physicians usually do not administer psychological tests, they usually refer their patient to a psychologist, in this case Dr. Lesner, to administer psychological tests, which Dr. Lesner did and sent back to Dr. Zapponi and Dr. Henderson. The ALJ rejected Dr. Lesner's finding because he found that Dr. Lesner was not  qualified to administer those tests, and that the result of those tests should have been taken into account. And the magistrate just seemed to disregard that fact or seemed to give it very little weight, because she said that even if those tests were taken into account, they were not sufficient. But I respectfully submit, Your Honor, that if Dr. Lesner's report is taken into conjunction, into consideration, in conjunction with Dr. Henderson and Dr. Zapponi's report, they would provide a complete picture of the appellant's mental condition. Okay. Now, just so I'm sure I understand what you're saying, Lesner was asked to do the psychological tests by Drs. Henderson and Zapponi? That's what happened, Your Honor. That's why I believe so. You believe so, or that's in the record? Yes, Your Honor. That is in the record? I'm not sure, Your Honor, but that's usually the course of treatment that a psychologist is usually asked by one of the treating doctors to provide, to provide testing. That's a customary practice in these psychiatric fields, Your Honor. And finally, with respect to all the appellant's mental condition, I believe that Dr. Lesner's report is in conjunction. The ALJ relied on a psychiatric evaluation that was done by a social security medical expert, and that was done in the year 2000, whereas the hearing and the evaluation done by the appellant's treating physician, Dr. Zapponi, Dr. Henderson and Dr. Lesner, were done in mid-2002. And I believe that the appellant's condition had deteriorated or was quite different from the period that he was initially tested by the social security administration medical expert and the period in which he underwent treatment with his treating physician. You've just about used your time. If you'd like to reserve a little for rebuttal. Good morning. Shabon on behalf of the Commissioner of Social Security in this case. The issue before this Court is whether the ALJ's decision was supported by substantial evidence and is proper as a matter of law. And the Commissioner submits that, based on the record in this case, the ALJ's decision did meet that standard. The problem I have, just to focus your argument, is I understand all of the rules, and following the rules, and I think that the ALJ and the magistrate judge articulated the proper legal standards. The problem I'm having is what a lot of this turns, therefore, on whether these doctors that treat, staying with the mental illness issue, were treating physicians or not. That's a big swing in this case. And I was troubled by some of what I read, some of which has been touched on. Dr. Englehorn was a 2000 evaluation. I don't know what he did to test in this case, but you have subsequent treatment reports that say that materially disagree and show that the claimant has a much worse depression and a degree of severity and the like. And those are rejected, because on the ground that these folks were not treating physicians, then there's the fallback physicians. Even if they were, their findings aren't supported. Trying to trace all this through, and mindful of the standard that you invoked, I'm left with a nagging concern here that I'm not sure that the proper inferences were drawn, and the counsel has addressed some of those. Let me just point out one that popped out to me, is that the magistrate judge going through this analysis, and I think she was attempting to be careful as well, she faulted Dr. Henderson. She seemed to find in his report no evidence that there was an ongoing course of treatment by Henderson. That it was sort of a one-time deal. And yet there's clearly stated within his report a reference to a 2000 event where Wynn was hallucinating. And that leaves me with an uneasy feeling here that these doctors, the weight of these doctors' opinions has been insufficiently credited. How can you help me on that? Well, Your Honor, it was the burden of the plaintiff to provide evidence of her disability. No, she did. Well, the narrative report provided by Dr. Henderson would have suggested that he had possibly treated the claimant in the past, but unfortunately we didn't have those treatment records and clinical findings submitted with that report. So is that beyond the pale of the ALJ to ask for them? Well, again, I think that that was plaintiff's burden. Well, I thought the law of our circuit is fairly clear that if there's some ambiguity or some uncertainty, then ALJ is, this is a question of whether somebody's getting the benefits to which they're entitled. So if all that's going on here is that it's the plaintiff didn't provide enough records when they certainly did, or the claimant certainly did provide quite a few records to say, well, they weren't good enough. I'm not sure, what's the authority in our circuit to say that that defeats the claimant's claim, that somehow the ALJ has no obligation to ask for the supplementation? Well, I think there was a lot of evidence in this record. There were various physician opinions, say, going for the mental impairment. Based on that evidence, the ALJ was able to ascertain over the period of time that the claimant was alleged to be disabled, the evidence from these various physicians. In that respect, I would say that the record was not necessarily ambiguous and needed supplementation. Well, I didn't think it was ambiguous. I thought it was pretty clear that the more recent treatments, if these physicians are treating physicians, was much stronger than what Dr. Englehorn opined, and Englehorn was out of date by two years. Well, I would actually disagree, Your Honor, to say that simply because there was a more recent report, that it was more, there was more probative weight attached to that report. Why? In a psychological evaluation, people deteriorate? You don't think they deteriorate over a period of two years or 18 months? I agree that people could deteriorate. Well, that's what the doctors seem to suggest. But unfortunately, the treatment records and the information contained within the reports did not support the ultimate conclusions. Well, I don't know what you, why not? I mean, taking Dr. Henderson's report, what is it about his report that's inadequate? What was he supposed to have done? Well, if Dr. Henderson had been treating the claimant for a period of time, I think we can expect that he would have included more information about those, what he had elicited during, say, a clinical examination or a mental status examination. Here, it's just, it's very generalized. It appears as though it's based on the complainant's subjective complaints. Well, that's what a psychiatrist does. But there still needs to be some sort of objective findings during the examination, explanation of those findings. And it just, it appears that... Well, can you point, I'm looking at the record, page 351 of the record. Well, again, these descriptions... It says it's a mental status examination as of his last visit, which implies that there have been prior visits. And he's giving his articulation of his observations as a medical expert. His concentration was poor. He was able to do simple calculative tasks, but the abstractions were more difficult to interpret. His moods have been depressed with little improvement, which implies that this is a continuum by this doctor. He remains, again, a continuum word, helpless, hopeless, and worthless. His memory is poor. His concentration was poor. He is sleeping only three hours per night. That's an anecdotal statement, obviously. He has to rely on the claimant. He eats very little. I agree that those are reported. In December 2000, he complained of auditory hallucinations. So, and with the use of antipsychotic, is it your position that that wasn't Dr. Henderson's analysis in 2000? He was picking up just from the claimant that this had happened? Well, to the point that he's talking about hallucinations in 2000, I would say that was contradictory to what information was elicited by Dr. Engelborn at around the same time. Well, in any event, we're talking about 2002, which is the more relevant time, and then he makes a psychiatric diagnosis of major depression, post-traumatic stress disorder, major impairment in several areas. Who do you regard as the treating physician here? Your Honor, I think it's very unclear on this record that any of these doctors were necessarily a treating physician. But we've just heard a whole litany of visits and diagnoses that run over a period of time. Unfortunately, it just seems as though that although the appellant will characterize many of these physicians as treating, it looks like that most of these were based on a referral. There was maybe a one-time examination. And again, getting back to, say, Dr. Henderson's report, although he describes the claimant's concentration as poor and his difficulty learning new information, he really doesn't explain what he has based that finding on. I'm going to say, based on this report, it does not indicate that there was a treatment relationship. Why? Well, again, we don't have the treatment records that allegedly, if he's supposed to have a lengthy treatment relationship. That's what you said a couple of times. So is it your view that a claimant who presents this kind of report must also present, and that's the standard operating procedure, must also present all of the underlying medical data? And if they fail to do so, they're out of court, in effect? I think that under the commissioner's regulations, to have a physician's opinion supported by clinical findings, you're going to need to provide those clinical findings. Well, is that the rule? I mean, do the claimants and the practitioners know that when they submit a report like this, that it is inadequate because it doesn't have the underlying data being presented along with it? Well, I think that when a claimant, as the claimant is here, is represented by an attorney, and they submit these records, and in this particular case, the claimant was represented by an attorney, not only before the ALJ, but the ALJ counsel. The ALJ asked if there were any supporting records? You know, I just — okay, I'm sorry. What I was going to say is that before the hearing at the ALJ for the appeals counsel and also for the district court, the plaintiff, through his counsel, had ample opportunity to supplement these opinions with evidence from these doctors. Did anybody ask him to supplement them? I don't think there's evidence that there was a specific request to supplement them. And when they did try to supplement, they were rejected? The contents were rejected because it was unclear as to where these treatment — from whom these treatment records were supplied. When does the ALJ have a — in other words, let's suppose the ALJ, which I'm willing to credit, that was trying to give this person a fair shot, why wouldn't the ALJ, if what you're saying is true, just simply say, I'll give you a little recess and I'll either subpoena or bring in the underlying data before I can decide that your guy isn't a treating physician and these aren't supported? Well, again, I think the record in this case, we had a lot of information from various doctors, and in that respect the record had contained ample evidence. If the physicians had included the treatment records with their opinions, we wouldn't have the problem. You're begging the question. My question is, why didn't the ALJ then say? I mean, it's coming down to weighing these things. Why didn't the ALJ save us all this trouble and say either cough up or the claimant's out of luck? But what you're saying is, well, you know, after the fact, now we know that given what the ALJ concluded from this report, that they should have brought in more than just the report. I think the burden, my understanding is the rules are that the ALJ, if they're finding some uncertainty or some gap in the record, is encouraged, if not required, to say so and let them resolve it at the hearing level. Why wasn't that a failure in this case? I think it's because he believed that based on the evidence that was supplied by these doctors that he could make the determination as to the validity of their evidence. Without knowing, without deciding anybody was a treating physician? Well, he did make those assessments, yes. He determined that the doctor, what his name was. Who did the ALJ decide was the treating physician? I don't think he found anybody. He relied on the Social Security doctors. Right. There is a reason for our rule that you give. You explain why you're not accepting the treating physician. Okay. Thank you. I would like to use whatever time remaining to bring to the Court attention another issue here involving the appellant's physical condition, which is similar to what we have seen dealing with his mental condition, is that with respect to his physical condition, there was three sets of x-rays. Counsel, we have your brief.  Let me ask you about Dr. Henderson and the underlying reports. You were representing the claimant, I understand. Yes, Your Honor. Was there any effort made to provide the supplemental records of Dr. Henderson? Well, Your Honor, in the record, there was Dr. Henderson's treating note. And that's the illegible note. Right. And if I've asked Dr. Henderson to provide more notes, it would be more illegible notes. So from what I understood, all I did is that I asked Mr. Pony to provide the note to establish that he had a long-term relationship with the applicant and that he was also a treating physician, because I didn't see any point in getting more treating notes from Dr. Henderson, because, Your Honor, they're just the same. Okay. Okay. Thank you, Your Honor. Okay. The matter just argued is submitted for decision. We'll hear the next case, which is with us, Justice Fernandez.
judges: Schroeder, Goodwin, Fisher